IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DIVISION OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GEOVERA SPECIALTY INSURANCE COMPANY, | * * * | |
| Plaintiff, | * | CASE NO.: 1:24-cv-00003-JB-M |
| vs. | * * | |
| DNB INVESTMENTS LLC, | * * | |
| Defendant. | * | |

**PLAINTIFF'S RESPONSE IN OBJECTION TO DEFENDANT'S
MOTION TO DISMISS**

COMES NOW Plaintiff GEOVERA SPECIALTY INSURANCE COMPANY, ("Geovera"), by and through its counsel of record, and files its Response in Objection to Defendant DNB Investments LLC's Motion to Dismiss, [Doc. 6]. In support of its Response in Objection to Defendant DNB Investments LLC's Motion to Dismiss ("Motion to Dismiss"), Geovera relies on its Complaint for Declaratory Judgment, the exhibits attached to and fully incorporated with said Complaint, the legal arguments and supporting the supporting citations stated herein, and all other documents of record in this matter. As shown herein, the Motion to Dismiss Geovera's Complaint for Declaratory Judgment filed by DNB Investments LLC, ("DNB"), should be denied for the reasons set forth herein.

I. **STANDARD OF REVIEW**

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms;" facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11 th Cir. 1990). A facial attack is an attack on the allegations stated in the Complaint. *Lawrence,* 919 F.2d at 1529. DNB brings its Motion to Dismiss as a "factual attack." [Doc. 7 at p. 4.] A "factual attack" is an

1

attack on the merits of the case. *Lawrence*, 919 F.2d at 1529. Thus, a "district court should apply a [Fed. R. Civ. P. 56] summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Lawrence,* 919 F.2d at 1530 (citing *Williamson v. Tucker,* 645 F. 2d 404, 415-16 (5th Cir.), *cert.denied*, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981)(quoting *Mortensen v. First Fed. Sav*., 549 F.2d 884, 891 (3d Cir. 1977)). *See also Chatham Condominium Ass'n v.Century Village, Inc., 597 F.2d 1002, 1011-6*r (5th Cir. 1979) (stating that "the jurisdictional issues [in such a case] should be referred to the merits, for it is impossible to decide one without the other.").

DNB's Motion argues that Geovera's Complaint is due to be dismissed because the amount in controversy does not exceed the $75, 000.00 as required to establish subject matter jurisdiction before this Court and that Geovera had failed to state a claim because a genuine dispute exists between the parties as to the amount of loss. As shown herein, DNB's Motion to Dismiss is due to be denied based on the merits of this case.

## II. LEGAL ARGUMENT

### A. DNB's Motion to Dismiss Should Be Dismissed Because the Amount in Controversy Meets the Jurisdictional Threshold.

DNB argues that its January 26, 2023 Notice of Claim and Demand for Payment ("Demand Letter") "clearly states the amount of controversy at issue is $73,964.76 less the deductible (and, implicitly, prior payments)" and, therefore, serves to establish that the amount in controversy does not meet the jurisdictional threshold and, therefore, this Court does not have subject matter jurisdiction over this matter as required by U.S.C. 28 § 1332(a) [Doc. 7 at p. 4]. A settlement demand letter, 'by itself, may not be determinative' of the amount in controversy, but 'it counts for something.'" *Davis v. Ray,* No. 2:19-CV-932-WKW, 2020 U.S. Dist. LEXIS 68736, at *6

(M.D. Ala. Apr. 20, 2020) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994)). See also *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1212 n. 62 (11th Cir. 2007) (A settlement offer constitutes evidence that the district court may consider in determining whether the amount in controversy is met.). However, the Demand Letter does not address the value of the claim in this case, *i.e.,* that Geovera's damages for being forced to submit to an umpire pursuant to the Order of the Baldwin County Circuit Court when it has no opportunity to fully investigate the supplemental claim because DNB refused to comply with its demand for the Examination Under Oath, which is a condition precedent to appraisal. In that instance, Geovera will have no appraisal to submit to the umpire and the umpire's determination as to the amount of the loss will be based only on the appraisal performed by ATA Consulting on behalf of DNB. Geovera's Complaint establish that the amount in controversy exceeded the $75,000.00 jurisdictional threshold, to wit: "the amount in controversy (*e.g.*, the remainder of Coverage A [under the Policy, ($185,000.00)] and Coverage C Policy Limits, [($9,250)], totaling $159,730.99) exceeds the sum or value of $75,000, exclusive of interest and costs." [Doc. 1 at p.2, ¶¶ 6-8.]

Notwithstanding, DNB asserts that the $73,964.76 settlement demand, to the exclusion of the support DNB gives for the amount of the demand in the Demand Letter, shows that amount in controversy does not meet the jurisdictional threshold required by 28 U.S.C. § 1332(b). [Doc. 7, at p. 4.] In the event this Court deems that the Demand Letter does address the value of the claim at issue in the Complaint, the Court should consider the Demand Letter in its entirety because adds "monetary weight" to the Geovera's claim that the amount in controversy is not limited to the amount of DNB's settlement demand, while subtracting "monetary weight" from DNB's position that the amount in controversy is limited to $73,964.76." A settlement demand adds monetary weight to the amount in controversy 'when it provides enough specific information to support the

… claim for damages to indicate that the offer is a reasonable assessment of the value of the plaintiff's claim.'" *Davis*, *supra.* (quoting *Simpson v. Primerica Life Ins., Co.*, No. 2:15-CV-777-WKW-PWG, 2015 U.S. Dist. LEXIS 171457, 2015 WL 9315658, at *9 (M.D. Ala. Dec. 3, 2015) (citation omitted))). In addition to demanding payment of $73,964.76, the Demand Letter threatens protracted litigation if Geovera does not respond to its demand with a settlement offer that is amenable to DNB. (*Id.*) In addition to the $73,965.76, DNB claims it suffered mental anguish because "GeoVera and its associates improperly adjusted the claim so that Client would not receive the coverage [it] had contracted to receive" and threatens to file suit under legal theories of breach of contract and bad faith. DNB goes to great lengths to educate Geovera on Alabama law allowing damages for mental anguish in breach of contract actions. [Doc. 7 at pp. 176-177.] (quoting *Liberty Homes, Inc. v. Epperson*, 581 So.2d 449, 454 (Ala. 1991) (quoting *B & M Homes, Inc. v. Hogan,* 376 So.2d 667, 671 (Ala.1979)). Furthermore, DNB threatens suit under the tort of bad faith based on its allegation that Geovera intentionally improperly adjusted its claim. [Doc. 7 at p. 175.] The tort of bad faith is an intentional tort and requires a showing of a refusal to pay coupled with a "conscious intent to injure" a claimant. (See *Davis v. Cotton States Mut. Ins. Co*., 604 So. 2d 354 (Ala. 1992). Bad faith allows recovery of damages for mental anguish, economic loss, and contractual damages. *See Gulf Atlantic Life Ins. Co. v. Barnes,* 405 So.2d 916 (Ala. 1981) (punitive damages are potentially available in bad faith cases).

In *Odelia v. Alderwoods, LLC*, Ms. Odelia sought remand arguing that Alderwoods had failed to establish the jurisdictional threshold invoking the district court's subject matter diversity. 823 F. App'x 742 (11th Cir. 2020). Because Ms. Odelia sought to recover damages stemming from breach of contract, fraud, negligence, intentional infliction of emotional distress and punitive damages, the Eleventh Circuit agreed with the district court that the Alderwoods had established

that Ms. Odelia's claims, more likely than not, exceeded $75,000.00: "It is hard to imagine that the sum of all of those claims, plus the punitive damages sought, would not exceed $75,000." *Id.* In this case, given the claims for breach of breach of contract (which allows recovery for mental anguish) and bad faith (which allows for recovery for mental anguish and punitive damages), it is hard to imagine that the sum of those claims, plus punitive damages, would not exceed $75,000.00 as DNB need only recover $1.035.24 in order to meet the jurisdictional threshold requirement of 1332 U.S.C. § 1332(b).

### B. DNB Fails to Establish that Geovera has Breached the Contract of Insurance.

As an initial matter, DNB incorrectly states that the bona fide dispute in this matter is the value of the loss. [Doc. 7 at p. 5.] For purposes of the Complaint for Declaratory Judgment, the actual controversy between Geovera and DNB "exists … with respect to its obligation to submit to appraisal with the umpire [as per Judge Stankoski]," [Doc. 1 at p. 7.]; not the value of the loss. Geovera's Complaint seeks a declaration that it owes no duty to participate in appraisal until such time as it has information sufficient to determine whether there is a disagreement as to the amount of the loss based on the following undisputed facts: 1) DNB did not comply with the conditions precedent to invoking an appraisal under the Policy; 2) DNB's letter to Judge Stankoski was procedurally deficient in that it failed to state that Geovera had not agreed to participate in appraisal with the umpire; 3) DNB's letter to Judge Stankoski failed to establish that the parties were unable to agree on an umpire, as one was never proposed by DNB; 4) DNB's request for an Order that Geovera submit to an appraisal with the umpire appointed in his Order was improperly made as an *ex parte* communication. [Doc. 7 at p. 7.]

> "'When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have

understood them. *Western World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159 (Ala. 1992*); St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.*, 584 So. 2d 1316 (Ala. 1991). ... Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction. *Canal Ins. Co. v. Old Republic Ins. Co*., 718 So. 2d 8 (Ala. 1998). A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. *Watkins v. United States Fid. & Guar. Co*., 656 So. 2d 337 (Ala. 1994). ...' [**23] *"B.D.B. v. State Farm Mut. Auto. Ins. Co.,* 814 So. 2d 877, 879-80 (Ala. Civ. App. 2001)."

*Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1042 (Ala. 2014).

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

…

**5.** Cooperate with us in the investigation of a claim;

…

**c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

[Doc. 1-2, ECF No.33.]

…

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an

6

appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately sent the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision of any two will set the amount of loss.

> Each party will:
> **1.** Pay its own appraiser; and,
> **2.** Bear the expenses of the appraisal and the umpire equally.

[Doc. 1-2, at pp. 24-25.]

Under the express terms of the Policy, "an appraisal is a step that may be demanded only <u>after</u> an insurance company and an insured come to a state of disagreement over the amount the insurer is to pay. Yet, the insurer has no obligation to pay any amount -- a condition necessary to put the parties in a state of disagreement over that amount -- until the insured meets his or her post-loss obligations." *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1043 (Ala. 2014). "An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. ... [A]n insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims." *Id.* at 1044 (quoting *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998)). *See also United Ins. Co. of America v. Cope*, 630 So. 2d 407, 411 (Ala. 1993) ("[T]he obligation to pay or to evaluate the validity of the claim does not arise until the insured

7

has complied with the terms of the contract with respect to submitting claims."). The Supreme Court has held that "no case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all of the terms of the contract with respect to submitting claims for payment." *United Ins. Co. of America,* 630 So. 2d at 412.

The terms of the Policy at issue are clear and unambiguous and, under Alabama law, a DNB must submit to the requested examination under oath before it may demand an appraisal. See *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1043-44 (Ala. 2014). A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract. *Watkins v. United States Fid. & Guar. Co.*, 656 So. 2d 337 (Ala. 1994). "'Only in cases of genuine ambiguity or inconsistency is it proper to resort to rules of construction.'" *Baldwin Mut. Ins. Co.*, 181 So. 3d at 1042 (quoting *Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8 (Ala. 1998)). Based on the clear and unambiguous terms of the Policy, DNB can demand appraisal only after it and Geovera "come to a state of disagreement over the amount [Geovera] is to pay." Geovera has no obligation to pay any amount, - - [payment is] a condition necessary to put the parties in a state of disagreement over that amount – until [DNB] meets [its] post-loss obligations." *Baldwin Mut. Ins. Co.* , 181 So. 3d at 1043 (Ala. 2014).

Thus, Geovera has no obligation to pay any amount in response to the supplemental claim for $73,965.76, nor can DNB demand appraisal with an umpire until such time as Geovera does so.

WHEREFORE, foregoing premises considered, Geovera respectfully requests that this Honorable Court enter an Order denying DNB's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

DATED this day, February 15, 2024.

*s/Gabrielle E. Reeves*
CHRISTINA MAY BOLIN (MAY032)
GABRIELLE E. REEVES (REE052)
*Attorneys for Geovera Specialty Insurance Company*

OF COUNSEL:

CHRISTIAN & SMALL, LLP
1 Timber Way, Ste. 101
Daphne, AL 36527
Email: cmbolin@csattorneys.com
gereeves@csattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following; and I hereby certify that I have mailed by United States Postal Service the document to any non-CM/ECF participants, on this the 15th day of Februay 2024:

Thomas H. Benton, Jr., Esq.
Benton Law Firm, LLC
Post Office Box 11
Mobile, AL 36601
Email: tom@benton-law.com

*s/Gabrielle E. Reeves*
COUNSEL